UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRANCE V.,

          Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

_____

**DECISION AND ORDER**

19-CV-1315S

1.     Plaintiff Terrance V.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for supplemental security income and disability insurance benefits under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.     Plaintiff protectively filed his applications with the Social Security Administration on March 10, 2016.  Plaintiff alleged disability beginning January 2, 2010, due to hidradenitis suppurative[2], depression, anxiety, lumbar dysfunction status-post minimal compression fracture at L2, Barrett's esophagus, GERD, and obesity (R. [3] at 18).

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

[2]Hidradenitis suppurativa "is a skin condition that causes small, painful lumps to form under the skin. The lumps can break open, or tunnels can form under the skin. The condition mostly affects areas where the skin rubs together, such as the armpits, groin, buttocks and breasts," https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306.

[3]Citations to the underlying administrative record are designated as "R."

Plaintiff's applications were denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

3.      On August 28, 2018, ALJ Eric Eklund held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Howard Steinberg appeared and testified.  (R. at 28-73.)  At the time of the hearing, Plaintiff was 46 years old, he completed the twelfth grade in 1990 (R. at 185).  Plaintiff had a commercial driver's license, but he no longer holds it due to his declining physical and mental health (R. at 185).

4.      The ALJ considered the case *de novo* and, on December 5, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[4]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 11, 15.)  Plaintiff filed a response on August 6, 2020 (Docket No. 15), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion (Docket No. 11) is denied, and Defendant's motion (Docket No. 14) is granted.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

---

[4]The ALJ's December 5, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

whether a claimant is disabled.  482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119

(1987).

9.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work.  Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.     Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, supra,

482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

11.     As for impairments consideration at step two, Plaintiff bears the burden of

establishing that he has a severe impairment, "which is 'any impairment or combination

of impairments which significantly limits [the claimant's] ability to do basic work,'" Miller v.

Berryhill, No. 16CV6467, 2017 U.S. Dist. LEXIS 153578, at *20 (W.D.N.Y. Sept. 20,

2017) (Telesca, J.); see 20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or

combination of impairments found to be "not severe" when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, SSR 85-28, 1985 SSR LEXIS 19 (1985). In this Circuit, this step two severity analysis "may do no more than screen out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995); see McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (Docket No. 11, Pl. Memo. at 14). Despite this level of screening at step two, plaintiff still has the burden to show that her impairments or combination of impairments significantly limited her ability to perform work.

12.     At step two, the impairment must significantly limit the ability to perform basic work-related activities for twelve consecutive months, 20 C.F.R. §§ 404.1521, 416.921 (R. at 18). These work-related activities include physical functions as walking, sitting, standing, lifting, pushing, pulling, reaching, carrying, or handling; capacity to see, hear, or speak; understand, carry out, and remember simple instruments; use judgment; respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in the routine work setting (R. at 18).

13.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 2, 2010, Plaintiff's claimed onset date. (R. at 15.)

14.     At step two, the ALJ found that none of Plaintiff's impairments were deemed to be severe (R. at 18-22).

15.     The ALJ concluded that Plaintiff was not disabled (R. at 22).

16.     Plaintiff argues that the ALJ erred in relying on the opinion of consultative examiner, Dr. Christine Ransom, Ph.D., that Plaintiff's mental health condition was mild and not severe (Docket No. 11, Pl. Memo. at 12-14; R. at 315-18, 746-49).  The ALJ gave great weight to Dr. Ransom's opinion (R. at 21-22).  Plaintiff counters that the ALJ should not rely upon consultative examiner's opinions (Docket No. 11, Pl. Memo. at 14-17).

17.     Plaintiff next contends that the ALJ failed to apply the appropriate treating physician rule for Dr. Viktor Yatsynovich's treatment notes and opinion (Docket No. 11, Pl. Memo. at 18-20).

18.     Plaintiff's arguments concentrate on his depression and hidradenitis suppurativa (see id. at 12-14, 16-17).

19.     On October 10, 2016, Plaintiff reported to the doctor feeling more anxious, and Dr. Yatsynovich assessed Plaintiff with PTSD, depressive disorder, panic disorder with agoraphobia, and ruled out major depressive disorder (R. at 550).  In January 5, 2017, Dr. Yatsynovich increased Plaintiff's Prozac dosage upon Plaintiff's complaint that he had difficulty enjoying life and was anxious among people (R. at 554).  The doctor opined that Plaintiff met mental impairment listing (R. at 550-52, 22).

20.     The ALJ, however, gave little weight to this opinion, finding that it was unsupported by objective medical evidence and Plaintiff had minimal abnormal findings on mental status examination (R. at 22).  The ALJ noted that Dr. Yatsynovich found that Plaintiff had normal speech, linear thought processes, good insight, good judgment, grossly intact memory and average intelligence (R. at 22, 554, 556, 558, 560, 563, 567).  The ALJ found that there is no indication in Dr. Yatsynovich's treatment notes of behavioral issues or any difficulty engaging Plaintiff (R. at 22).

6

21.     Plaintiff also faults the ALJ for failing to consider the good reasons rule for the weight given to Dr. Yatsynovich's opinion (Docket No. 11, Pl. Memo. at 19-20).  He concludes that the ALJ did not give good reason for giving little weight to the doctor's opinion (id.).

22.     Defendant responds that Plaintiff has not demonstrated any of his impairments were severe, applying the four functional area special technique analysis to determine the severity of his mental impairments (Docket No. 14, Def. Memo. at 1, 12-15).  The ALJ found that Plaintiff had only mild limitations in the four areas because Plaintiff was socially appropriate, cooperative, alert and oriented with good eye contact, with normal speech, average intelligence, intact attention and concentration, intact memory and good insight and judgment (R. at 21).  The ALJ refuted Plaintiff's claims of frequent and severe panic attacks since these were inconsistent with the October 2018 consultative examination of Dr. Ransom (R. at 21, 747, 748-49), where Plaintiff denied having panic attacks (R. at 747).

23.     As for Dr. Yatsynovich's opinion, Defendant argues that the medical record did not support the doctor's conclusion of an overly restrictive assessment of Plaintiff's abilities, noting that Plaintiff's diagnosed depression was mild to moderate (Docket No. 14, Def. Memo. at 16-17; R. at 558).  Defendant also points out that the ALJ complied with the treatment physician rule by giving a comprehensive explanation (Docket No. 14, Def. Memo. at 17).  Defendant urges this Court exercise the usual deference to the findings of the ALJ (id. at 19).

24.     As for Plaintiff's claimed mental impairments, Plaintiff had a history of post-traumatic stress disorder (Docket No. 11, Pl. Memo. at 13-14) and was hospitalized in

2011 for self-harmful ideation (R. at 315).  Plaintiff had panic attacks for several years (R. at 315 (Plaintiff reported to consultative examiner Dr. Ransom)).  He had outpatient medication and therapy treatment for depression from 2010 to 2012, was out of treatment for two years, and back in therapy and treatment in 2014 (R. at 746).

25.   Dr. Ransom evaluated Plaintiff in 2016 and 2018.  On both occasions she opined that Plaintiff had only mild mental health conditions, that his post-traumatic stress disorder and major depressive disorder were currently mild (R. at 418, 748, 753).

26.   The only basic work activity noted in Plaintiff's medical record is understanding, carrying out, and remembering simple instructions from his attention and concentration.  Plaintiff's primary treating sources noted his complaints of depression and lack of concentration (R. at 254, 344, 363, 548).  Reviewing his PHQ-9 questionnaires, the treaters concluded Plaintiff was moderately (R. at 245) or severely depressed (R. at 344, 363, 549).  He had other medical appointments in 2011 to 2018 that noted his psychiatric hospitalization, nightmares and flashbacks that induced by post-traumatic stress disorder (R. at 241, 562, 545).

27.   Plaintiff has not indicated other basic work activities that were limited by his ailments.

28.   Focusing on the basic work activity of Plaintiff's ability to carry out simple instructions, the ALJ reviewed Plaintiff's medical record and found that he had intact attention and concentration (R. at 21, 317 (Dr. Ransom)), or with thought processes that were characterized as either focused or organized (R. at 580, 584) or possessing fair attention and concentration (R. at 674), despite Dr. Yatsynovich finding on April 2016 that Plaintiff had diminished level of attention and concentration (R. at 21, 563, 567) and his

primary physician noting in Plaintiff's PHQ-9 surveys noting his trouble concentrating on reading the newspaper or watching television (R. at 254, 344, 363).

29.    Plaintiff has not produced other evidence that his mental impairments significantly limited his ability to perform basic work activities.  He points out findings of severe depression (e.g., Docket No. 11, Pl. Memo. at 13) but fails to show how this depression limited his ability to work or point to the medical record findings that his depression impaired a basic work activity.

30.    This Court finds that the ALJ's consideration of consultative examiner Dr. Ransom's opinions is appropriate because those opinions are consistent with record, concluding that Plaintiff had intact attention and concentration, features necessary for understanding simple instructions.

31.    Plaintiff next seeks appropriate consideration of the opinion of treating source Dr. Yatsynovich.  On October 10, 2016, Plaintiff told Dr. Yatsynovich that he felt more anxious and had negative thoughts through the day while compliant with treatment process (R. at 556).  Plaintiff then reported to Dr. Yatsynovich on January 5, 2017, that he was having difficulty enjoying life, while compliant with psychotropic medication (R. at 554).

32.    On the medical statement concerning depression for Plaintiff's Social Security disability claim, Dr. Yatsynovich found that Plaintiff had marked limitations for restrictions of activities of daily living, difficulty of maintaining social functioning (R. at 550).  The doctor found that Plaintiff had a complete inability to function independently outside of his home due to panic attacks (R. at 551).  The doctor also noted Plaintiff had markedly impaired in the ability to understand and remember short and simple

instructions, to understand and remember detailed instructions, and the ability to perform activities within a schedule, maintain regular attendance, and be punctual (R. at 551). Dr. Yatsynovich opined marked limitations in Plaintiff dealing with the general public and accept instruction and criticism from supervisors (R. at 552).

33.    The ALJ, however, gave good reasons for the weight he gave to Dr. Yatsynovich's opinion.  The ALJ noted the doctor's opinions have inconsistent with his examination findings of minimal abnormality and no indication in his treatment notes of behavioral issues of difficulties engaging Plaintiff (R. at 22).  This Court has reviewed the doctor's psychiatric notes in support of the medical statement (R. at 554-64) and, as Defendant notes (Docket No. 14, Def. Memo. at 16), Plaintiff described his depression there as mild-to-moderate, he denied significant depressive or anxiety symptoms, and he claimed that he was happy with his current medication (R. at 558, 560, 563).  The ALJ properly weighed Dr. Yatsynovich's opinion in according it little weight.  The ALJ also stated good reasons for the weight given to Dr. Yatsynovich's opinion.

34.    Thus, Plaintiff's motion for judgment (Docket No. 11) on the ALJ's step two consideration of his mental impairments is denied.

35.    As for Plaintiff's physical impairments, he argues that his hidradenitis suppurativa has more than de minimis severity to meet step two, pointing to the multiple surgeries he had to address the condition (Docket No. 11, Pl. Memo. at 16, 7; Docket No. 15, Pl. Reply Memo. at 2-3; R. at 250, 238, 395, 306).  Prior to his second surgery, Plaintiff complained that the hidradenitis caused swelling that was affecting his quality of life (R. at 306) but the record did not specify how it affected his life.

36. During the ALJ hearing, Plaintiff testified that after exertion he would have "giant lumps" in his sweat glands (R. at 38-39, 213, 19).  He complained that he would have pain and lumps in his arm pits and between his thighs (R. at 38-39, 213, 215).  He had repeated surgical procedures to remove the lumps (R. at 20, 320).

37. Plaintiff replies that his hidradenitis suppurative also limits his ability to perform basic work (Docket No. 15, Pl. Reply Memo. at 2).  He had surgery that was prescribed as necessary in April 2016; without it, his quality of life was affected (R. at 306; Docket No. 15, Pl. Reply Memo. at 2).  He argues that the record supports the severity of his mental and physical condition to meet step two (Docket No. 15, Pl. Reply Memo. at 2).

38. Dr. Donna Miller conducted a consultative examination of Plaintiff on June 6, 2016 (prior to his second surgery), noting his hidradenitis (R. at 320).  Dr. Miller observed that Plaintiff's gait and stance was normal, that he did not appear to be in acute distress, that he could do a full squat, that his skin exam was within normal limits (R. at 321).  Dr. Miller found that Plaintiff had mild erythema on the axillae (R. at 321).  She confirmed the diagnosis of hidradenitis but concluded that Plaintiff had "no significant physical limitations" (R. at 323).

39. Plaintiff was examined on October 10, 2018, by Dr. Rita Figueroa, where Plaintiff complained that his left arm was tight after the second operation to remove axillary skin glands, limiting his range of motion and complains of numbness and tingling in his left hand (R. at 755).  Dr. Figueroa found that Plaintiff was not in acute distress, his gait and stance were normal (R. at 756).  Plaintiff had two hypertrophic scars across from his arm pit, creating a contracture in the arm (R. at 756), while later noting in his

musculoskeletal assessment that he had no evident contractures (R. at 757). Dr. Figueroa opined that Plaintiff "will have a mild limitation for repetitive reaching, pushing, and pulling; mild to repetitive bending" (R. at 758).

40.  The ALJ afforded great weight to these two consultative examination findings (R. at 21) to which Plaintiff has not objected to or refuted.

41.  Defendant responds that Plaintiff has not showed how this ailment significantly limited his physical ability to perform basic work activities because Plaintiff's medical sources did not observe or assess limitations due to this ailment (Docket No. 14, Def. Memo. at 18).  Defendant also relies upon the deference given to the Commissioner's findings of fact (id. at 19).

42.  As the ALJ found (R. at 20), Plaintiff has not presented evidence that his hidradenitis suppurativa caused functional limitations.  The only support for any limitation on Plaintiff's basic work activities is his own testimony and the post-2016 surgery finding of Dr. Figueroa of mild limitation in repetitive reaching, pushing, pulling, and bending.  The ALJ had substantial evidence to conclude that Plaintiff had not met his burden of establish a significant limitation of Plaintiff's ability to perform basic work (such as lifting, pushing, pulling, or bending) from Plaintiff otherwise having a full range of motion (R. at 20, citing generally R. 586-745, Ex. 13F, Niagara Falls Memorial Medical Center records).

43.  Plaintiff had cysts removed in 2014 and 2016 (R. at 368, 729).  After the second surgery, Plaintiff's doctors did not report a reduced range of motion for the surgical areas (R. 674).

44.     While Plaintiff suffered recurrence of hidradenitis suppurativa, including multiple surgeries, the record here does not have any functional assessment to meet a de minimis standard for severity to meet step two.

45.     Thus, Plaintiff's motion for judgment (Docket No. 11) on this ground is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        February 10, 2021
              Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge



P:\ECF Documents\Terrance V.19CV1315.Draft D&O.Clc2.Docx